## CIRCUIT COURT OF FAIRFAX COUNTY

Vrej Haghnazarian

v.

State Farm Mutual Ins. Co.

June 8, 1990

Case No. (Law) 87320

By JUDGE ROSEMARIE ANNUNZIATA

The matter before the Court is plaintiff Vrej Haghnazarian's claim for an award of statutory attorney's fees under Va. Code, § 38.2-209 (Repl. Vol. 1986), based on his claim that the defendant, State Farm Mutual Insurance Company, did not act in good faith in its failure to fully compensate him for a covered loss. Plaintiff was involved in an automobile accident on October 5, 1986, in which his vehicle was damaged. His vehicle, a 1980 Mercedes Benz, was insured by defendant, State Farm. Plaintiff filed suit on October 19, 1988, claiming defendant breached its insurance contract and that it had acted in bad faith in failing to make full payment under the policy. On the former claim, the jury determined that plaintiff's vehicle was a total loss as a result of the accident and that State Farm breached its contract by failing to make full payment as required by the policy. The latter claim is the matter presently before me, having been excluded from the jury's consideration by prior court order.

The plaintiff's efforts to resolve his insurance claim began with a delay of twenty-five days before State Farm appraised his vehicle for property damage after the accident. At State Farm's request and after it declined to approve the performance of repairs by the American Service Center, an authorized Mercedes dealer, plaintiff

had his vehicle towed to H. B. Lantzch, Inc. (HBL). HBL reported the car to be a total loss, a conclusion reported to State Farm. State Farm declined to consider the vehicle a total loss and subsequently estimated the cost of repairs to be in the amount of $5,248.47. HBL declined to repair the vehicle for the estimated cost and provided its own estimate of costs which it felt were required to repair the vehicle. HBL's estimate was some two times greater than that of State Farm and was open-ended, since HBL anticipated that the need for additional repairs would become evident in the course of repair. State Farm's appraisal ultimately proved to be substantially lower than the amount actually spent on the vehicle repairs. Further, at the time of the jury trial, the plaintiff's vehicle remained inoperable.

Notwithstanding the significant differences between its repair estimate and that submitted by HBL, State Farm made no further attempt to inspect and evaluate the reported extent of the damage or the scope of the needed repair work. It refused to declare the vehicle a total loss and refused to have the vehicle repaired at HBL. Rather, it gave plaintiff the names of three repair shops to which plaintiff was directed to take his vehicle. This direction was given to plaintiff nearly two months after the accident occurred and over one month after State Farm terminated its payment for the storage of the damaged vehicle. State Farm's representative testified at trial he was not sure why coverage for storage was terminated. Plaintiff was also charged the expenses for a "tear-down" of the vehicle which State Farm required be done before it completed its estimates.

Plaintiff brought his car to Pope's Auto Body, one of the three shops to which he had been referred by State Farm, where it remained under repair for the next six months, notwithstanding plaintiff's complaints to State Farm regarding the delay. After plaintiff finally received possession of his vehicle following repairs at Pope's Auto Body in June of 1987, he continued to incur expenses for items State Farm refused to cover. He was also advised by the HBL Mercedes Service Center who performed a diagnostic analysis on the repaired vehicle that the vehicle needed an additional $4,000 to $5,000 in repair work to

restore it to its previous condition. Plaintiff advised State Farm of the inadequacy of the repairs.

On September 2, 1987, plaintiff again wrote to State Farm enclosing an estimate prepared by the HBL body shop on August 27, 1987. The estimate advised that a minimum of $2,215.31 of additional body work was required in order to road test the vehicle to determine if more repairs were required. Based on HBL's findings, plaintiff further notified State Farm of his belief that the vehicle was unsafe to drive and requested a meeting at HBL where the vehicle was then stored. State Farm refused to conduct an inspection at HBL and once again directed plaintiff to return his vehicle to Pope's Auto Body. Plaintiff wrote to State Farm again on September 14, 1987, requesting that the inspection take place at the HBL body shop. No inspection ever took place, and State Farm advised plaintiff no further repairs would be authorized.

The issue to be resolved is whether, under these facts, State Farm failed to deal with plaintiff in good faith, and whether it is thus liable for plaintiff's reasonable attorney's fees and costs under Virginia Code Section 38.2-209. Plaintiff's evidence, taken as a whole, justifies an award for attorney's fees, in my opinion, for the reasons set forth below.

In actions on insurance policies, Virginia Code Section 38.2-209 provides, in pertinent part, that the insured shall recover costs and reasonable attorney's fees where "the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy." Va. Code Ann. § 38.2-209 (Repl. Vol. 1986). The Virginia Supreme Court has held that the statute is both "punitive and remedial in nature," *CUNA Mutual Insurance Society v. Norman,* 237 Va. 33, 38, 375 S.E.2d 724 (1989). It is designed to punish an insurer which denies coverage or withholds payment and to reimburse the insured who has been compelled to incur litigation expenses by the insurer's bad faith conduct.

A decision by an insurer to deny coverage or withhold proper payment is in good faith only if it is an honest and intelligent decision in light of the company's expertise in the field. *Aetna Casualty & Surety Co. v. Price,* 206 Va. 749, 761-62, 146 S.E.2d 220 (1966). The standard is

one of the reasonableness of the insurer's actions. *CUNA Mutual Insurance v. Norman*, 237 Va. at 38 (1989).

Proof of bad faith does not require evidence of fraud, deceit, dishonesty, malice or ill will. *State Farm Mutual Automobile Insurance Co. v. Floyd*, 235 Va. 136, 143, 366 S.E.2d 93 (1988). Rather, an insurer acts in bad faith where it acts "in furtherance of its own interest, with intentional disregard of the financial interest of the insured." *Id.* Since an award of attorney's fees pursuant to Virginia Code § 38.2-209 is, in part, punitive in nature, it is my opinion that the test may also be viewed as encompassing conduct which is so reckless as to evince a conscious disregard for the rights of the insured. *See, Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967).

In determining the issue, it is my opinion that evidence of the insurer's entire course of conduct, at least up to the time of filing suit, should be considered. *Downer v. Georgia Farm Bureau Mutual Insurance Co.*, 176 Ga. App. 641, 337 S.E.2d 422, 424 (1985) ("to recover penalties for bad faith, the bad faith acts must have occurred subsequent to the insured's claim but prior to claimant's filing suit to recover.") *See also A & E Supply Co., Inc. v. Nationwide Mutual Fire Insurance Co.*, 612 F. Supp. 760 (W.D. Va. 1985) *rev'd on other* grounds, 798 F.2d 669 (4th Cir. 1986), *cert. denied* 479 U.S. 1091 (1987).

The insurer has a continuing duty to investigate claims and make proper payments as losses are discovered. *See, Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667, 674-75 (1974); *Hammack v. Resolute Fire Insurance Co.*, 223 La. 359, 96 So. 2d 612, 617 (1957). Further, where its failure to make proper payment results from an incomplete investigation into the extent of the covered losses, the insurer's liability may attach. *CUNA Mutual Insurance Society v. Norman*, 237 Va. at 38; *Aetna v. Price*, 206 Va. at 762. *See also McCorkle v. Great Atlantic Insurance Co.*, 637 P.2d 583 (Okla. 1981) (upholding award of punitive damages and attorney's fees where insurer conducted inadequate investigation and insisted that plaintiff accept an unreasonably low payment); *Eldridge v. Northwest G. F. Mutual Insurance Co.*, 88 S.D. 426, 221 N.W.2d 16 (1974) (upholding award of attorney's fees where defen-

dant failed in its duty to conduct a good-faith investigation of plaintiff's claim and refused to pay the full amount of plaintiff's loss without reasonable cause.) As one treatise writer has noted:

> if subsequently to the making of a justified refusal, the insurer acquires such knowledge as would have made refusal unjustified if that knowledge had been possessed at the time of the refusal, should the insurer be permitted to persist in what is now an erroneous position, or should not the spirit, if not the letter, of the penalty statute require that the insurer correct what it now knows to be an improper conclusion and hasten to so inform the insured? Undoubtedly, in most instances the insurer will do so to avoid further expense and overhead of defending against the claim. If it fails to do so and persists in its original position of refusing to pay, it should be held liable for the statutory penalties.

15A Couch, *Cyclopedia of Insurance Law* 2nd, § 58:76, p. 347 (1983).

The insurer may also be liable for attorney's fees where it delays unreasonably in making full payment to the insured. *E.g., Thompson v. Shelter Mutual Insurance*, 875 F.2d 1460, 1463 (10th Cir. 1989); *Fassola v. Montgomery Ward Insurance Co.*, 104 Ill. App. 3d 825, 433 N.E.2d 378, 383 (1982).

In light of Virginia law, the bad faith analysis in this case must be premised on an examination of the reasonableness of the insurer's conduct. *CUNA Mutual Insurance Society v. Norman*, 237 Va. at 38. The Court in *CUNA* enumerated, by way of example, several questions to be considered in determining the insurer's liability. The relevant questions are not limited to those enumerated, the touchstone being the reasonableness of the insurer's conduct in light of the facts of each particular case.

In my opinion there are analytically at least three areas of State Farm's conduct that must be examined in light of the reasonableness standard: (1) the insurer's investigation of the facts, both initially and as they

developed in the course of repairing the vehicle, *CUNA*, 237 Va. at 38; *Aetna v. Price*, 206 Va. at 762; (2) the insurer's decision to refuse payment for the total loss of the insured's vehicle, viewed in light of the evidence discovered in the course of repairing the vehicle, *CUNA*, 237 Va. at 38; (3) the effect of its decision on the insured, as well as the effect of the delay in making full payment, including any resulting loss of time and money incurred by the insured as a result; *see State Farm Mutual Auto Ins. v. Floyd*, 235 Va. at 143-44. The primary question in performing such an analysis is: did the insurer act in furtherance of its own interest and intentionally disregard the interest of the insured? *Id.*

In the present case, the insurer's investigation of the facts was perfunctory. Moreover, the insurer disregarded or discounted information it received from its insured and from third parties about the effectiveness of the repairs authorized and undertaken. Its decision to repair rather than pay for the total loss of the vehicle appears increasingly untenable and unreasonable in light of the absence of an adequate investigation, and as the time needed to effect satisfactory repair lengthened, and as the attempts to repair failed. Its demands upon the insured in terms of money, time, effort, and inconvenience were unreasonable. State Farm unreasonably imposed upon its insured the responsibility of protecting his own interests; plaintiff had to conduct his own investigation of the nature and scope of the repairs needed, manage the repair work in the face of long delays and questionable adequacy, and underwrite some of the costs of repair and storage.

In sum, the facts and circumstances relating to the extent of the damage sustained by the insured's vehicle and the continuing failure of the insurer to conduct a reasonable investigation, together with other acts of the insurer which compounded the insured's losses, support, by clear and convincing evidence, the conclusion that the insurer's disregard of the insured's financial interest was intentional, or of such recklessness as to evince a conscious disregard of the insured's financial interest. Accordingly, I find State Farm liable pursuant to Virginia Code § 38.2-209 for attorney's fees in the amount of $15,000.00 and for costs in the amount of $4,224.05.